SEIDL, J.
*148 ¶1 Corey Fugere appeals an order for commitment placing him in institutional care and an order denying his postdisposition motion to withdraw his plea of not guilty by reason of mental disease or defect (NGI). Fugere claims his NGI plea was not made knowingly, intelligently, and voluntarily because the circuit court failed to accurately inform him of the correct maximum term of civil commitment he faced under WIS. STAT. § 971.17 (2015-16).[1]
¶2 We conclude that while a circuit court must correctly advise a defendant pleading NGI of the maximum term of imprisonment he or she faces, a court's failure to accurately advise a defendant of his or her possible maximum civil commitment term does not render an NGI plea unknowing, unintelligent, or involuntary. The safeguards required for a valid plea apply only to the guilt phase of an NGI plea, and an individual's possible civil commitment resulting from an acquittal during the subsequent mental responsibility phase is neither a "punishment" nor a direct consequence of a defendant pleading guilty or no contest during the guilt phase. Therefore, a circuit court need not advise a defendant regarding his or her possible civil commitment-much less do so accurately-in order for a defendant's NGI plea to be knowing, intelligent, and voluntary.[2] Applying these standards to the facts of this case, Fugere is not entitled to withdraw his plea. Accordingly, we affirm.
*149 BACKGROUND
¶3 In April 2015, the State charged Fugere with four counts of first-degree sexual assault of a child under the age of twelve. At the time the charges were filed, Fugere was committed at the Mendota Mental Health Institute on a prior order of commitment. In the earlier case, Fugere was found NGI of third-degree sexual assault.
¶4 A plea agreement was reached in this case, the terms of which were as follows: (1) Fugere would plead NGI to one count of first-degree sexual assault of a child, and all other charges would be dismissed and read in; (2) Fugere would waive his right to a trial on the issue of guilt and admit to there being a factual basis that he committed the crime; (3) both parties would stipulate that Fugere, as a result of a mental disease or defect, lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law; (4) both the State and Fugere would recommend to *131 the circuit court that Fugere be civilly committed for thirty years; (5) Fugere would submit a DNA sample and pay the related surcharge; and (6) both parties would stipulate that the circuit court order a predispositional investigation to determine if a conditional release plan was appropriate.
¶5 Fugere then pled NGI to one count of first-degree sexual assault of a child. The circuit court explained to Fugere that the effect of his plea would be that Fugere was admitting he committed the act, but also that he was asserting he had a mental disease or defect that made him legally not responsible for the act. Fugere confirmed he understood this explanation.
*150 ¶6 The following exchange occurred during the plea colloquy:
THE COURT: You are not actually going [to] be found guilty of the charge today. You are going to be found [not] guilty by reason of mental disease or defect, which is a bit different, but it means you could be placed on supervision for up to 30 years.
[PROSECUTOR]: Sixty years is the maximum.
THE COURT: Sixty years, but the recommendation is 30 years, do you understand that?
THE DEFENDANT: Yes.
Defense counsel confirmed that Fugere could receive up to sixty years of commitment. Counsel also explained that he spoke with Fugere about his right to litigate possible challenges to the charges, and he advised the court that Fugere nonetheless decided to enter an NGI plea.
¶7 The circuit court accepted Fugere's plea and concluded Fugere had committed the offense. Thus, Fugere waived his right to a trial to determine his guilt.[3] Fugere and the State then stipulated there was no need for the second phase of trial aimed at determining Fugere's mental responsibility, because *151 Fugere's mental disease or defect had been established in his earlier commitment case. The court then ordered Fugere committed for thirty years, with his initial placement in institutional care.
¶8 One year after his initial commitment, Fugere filed a motion for plea withdrawal.[4] Fugere argued that his plea was not knowingly, intelligently, and voluntarily made because the circuit court erroneously told him that he faced a sixty-year maximum civil commitment term rather than the correct forty-year maximum commitment term. There is no dispute that Fugere knew the maximum statutory penalty for his crime was sixty years of imprisonment, but incorrectly believed the maximum civil commitment time was also *132 sixty years.[5] *152 ¶9 The circuit court denied Fugere's motion, concluding there was no requirement under the law that it advise Fugere of the correct maximum amount of time he could be civilly committed in relation to his NGI plea. Fugere now appeals.
DISCUSSION
¶10 As this case involves a postdisposition motion to withdraw a plea, we briefly summarize the standards governing such motions. A defendant must ordinarily show a manifest injustice to be entitled to withdraw a guilty or no-contest plea. State v. Bangert , 131 Wis. 2d 246, 283, 389 N.W.2d 12 (1986). Generally, a manifest injustice exists where a guilty or no-contest plea was not entered knowingly, intelligently, and voluntarily. State v. Finley , 2016 WI 63, ¶ 58, 370 Wis. 2d 402, 882 N.W.2d 761.
¶11 Whether a defendant's plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact. Id. , 59. An appellate court upholds the circuit court's findings of historical fact unless they are clearly erroneous, but it independently determines, as a matter of law, whether the circuit *153 court's findings of historical fact demonstrate that the defendant's plea was knowing, intelligent, and voluntary. Id.
¶12 An understanding of the process for cases involving an NGI plea is also essential to this case. When pleading NGI, a defendant has two options: (1) to enter a dual plea of both not guilty and NGI; or (2) to enter an NGI plea without an accompanying not-guilty plea. WIS. STAT. § 971.06(1)(d). For clarity (and to distinguish it from a dual NGI and not-guilty plea), the State refers to this second type of plea as a "standalone NGI plea," and we adopt that phrase in this opinion.
¶13 If a defendant enters both an NGI and a not-guilty plea, the result is a trial with two phases. Magett , 355 Wis. 2d 617, ¶ 33, 850 N.W.2d 42. The first phase, commonly referred to as the guilt phase, addresses whether the defendant committed the criminal act of which or he she is accused. Id. If the jury determines that the defendant committed the act in the guilt phase, the trial then proceeds to the second phase, known as the responsibility phase. Id. In phase two,
the jury considers whether the defendant had a mental disease or defect at the time of the crime and whether, as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or *133 her conduct or conform his or her conduct to the requirements of law.
Id. (citation omitted).
¶14 If a defendant enters a standalone NGI plea, he or she waives the constitutional right to a trial *154 as to the guilt phase and admits that he or she committed the criminal act. State v. Shegrud , 131 Wis. 2d 133, 137, 389 N.W.2d 7 (1986). Therefore, and as our supreme court concluded over thirty years ago in Shegrud , a standalone NGI plea implicates the same safeguards as a guilty or no-contest plea, even though the terms of WIS. STAT. § 971.08(1)[6] do not expressly apply to defendants pleading NGI. Id. Accordingly, the well-established procedures delineated in Bangert must be followed when a defendant enters a standalone NGI plea. Id. at 137-38, 389 N.W.2d 7.[7]
¶15 As relevant to this appeal, Bangert requires a circuit court to establish that an NGI defendant understands the nature of the crime with which he or she is charged and "the range of punishments to which he is subjecting himself by entering a plea," and it must notify the defendant of the direct consequences of his or her plea. See State v. Brown , 2006 WI 100, ¶ 35, 293 Wis. 2d 594, 716 N.W.2d 906. An NGI defendant who was not informed of the direct consequences of his or her plea did not enter that plea knowingly, intelligently, *155 and voluntarily and, therefore, is entitled to withdraw the plea in order to correct that manifest injustice. See Finley , 370 Wis. 2d 402, ¶¶ 58-60, 882 N.W.2d 761. However, no manifest injustice occurs when the defendant is not informed of a collateral consequence of pleading guilty or no contest. State v. Kosina , 226 Wis. 2d 482, 485, 595 N.W.2d 464 (Ct. App. 1999).
¶16 Fugere contends he is entitled to withdraw his plea because it was not knowingly, intelligently, or voluntarily made and, therefore, was both manifestly unjust and in violation of the holdings in Bangert and Shegrud . Fugere posits this occurred because the circuit court incorrectly told him he faced a maximum of a sixty-year civil commitment, when he actually faced only a maximum of a forty-year commitment. Fugere asserts he did not otherwise understand his maximum possible commitment.
¶17 The State responds that the standards regarding plea colloquies in criminal cases apply only to an NGI defendant's admission of having committed the crime and not to matters regarding the subsequent determination of the defendant's mental responsibility. Relatedly, the State contends a civil commitment potentially resulting from an NGI plea is neither "punishment" nor a direct consequence of a defendant being found, during the guilt phase, to have committed the criminal act at issue. We conclude the State's view of the law is correct.
*134 ¶18 We note at the outset that there is no express requirement under Shegrud or any other Wisconsin case of which we are aware that, in the NGI context, a circuit court must inform a defendant as to the potential maximum range of civil commitment if he or she is found to be not mentally responsible for his or *156 her crime. The overarching question in this case is what, if any, information an NGI defendant must be made aware of regarding his or her possible civil commitment when that defendant enters an NGI plea.
¶19 We conclude that circuit courts need not advise a defendant pleading NGI of the potential range of civil commitment he or she will face if found not mentally responsible for his or her crimes, much less do so correctly. We further hold that the requirements established under Bangert and its progeny for a valid plea apply only to matters involving an NGI defendant's admission of guilt. Stated differently, these requirements apply to the defendant's admission that, but for his or her lack of mental capacity, he or she is guilty of the charged offense. When a defendant pleads NGI, there are no greater burdens imposed on the circuit court than those for otherwise accepting a guilty or no-contest plea. See State v. Duychak , 133 Wis. 2d 307, 314, 395 N.W.2d 795 (Ct. App. 1986). These conclusions derive from the fact that the procedures set forth in Bangert apply when a defendant enters an NGI plea only because, by entering such a plea, the defendant waives several constitutional rights. Shegrud , 131 Wis. 2d at 137-38, 389 N.W.2d 7. These constitutional rights are only attendant to the guilt phase. See State v. Francis , 2005 WI App 161, ¶¶ 15-21, 285 Wis. 2d 451, 701 N.W.2d 632 (considering whether a defendant's withdrawal of his or her NGI plea requires the circuit court to conduct an on-the-record colloquy). The same constitutional rights are not implicated or waived during the mental responsibility phase. Indeed, our courts have long held that the responsibility phase of an NGI trial is not part of a criminal trial, Magett , 355 Wis. 2d 617, ¶ 40, 850 N.W.2d 42 (citing *157 State v. Koput , 142 Wis. 2d 370, 395, 418 N.W.2d 804 (1988) ), and the right to an NGI defense is purely statutory, not constitutional, id. , ¶ 32.
¶20 We therefore reject Fugere's argument that a circuit court is required to inform an NGI defendant about the maximum length of commitment "when the defendant enters an NGI plea, and waives his right to a trial for both phases of the bifurcated proceedings." As an initial matter, Fugere is incorrect that his stipulation with the State as to the mental responsibility phase involved any waiver of his constitutional rights. Furthermore, it is unclear to this court whether Fugere's arguments are limited to the unique facts of his case-namely, that Fugere pled NGI and stipulated with the State that he was not mentally responsible for the crimes to which he pled-or also apply to NGI cases in which a defendant reaches a plea agreement, but there still is a trial on mental responsibility. In any case, we reject both arguments for the reasons provided throughout this decision.
¶21 Fugere's argument seemingly proceeds from the premise that Fugere waived or otherwise lost some constitutional right by stipulating, along with the State, to the fact of his mental disease or defect and bypassing the second phase of an NGI trial. This premise is plainly incorrect. An NGI plea is both an admission as to the criminal conduct and a defense to guilt for the same conduct. In raising this defense, the defendant has the burden of proving his or her mental disease or defect. See Magett , 355 Wis. 2d 617, ¶ 39, 850 N.W.2d 42. Therefore, the stipulation in *135 this case simply meant Fugere would be successful in his NGI defense, as the State waived its right to contest Fugere's criminal *158 liability vis-à-vis his mental responsibility. The fact that, in this particular case, Fugere's plea combined both phases-in that Fugere agreed to waive his right to a trial on the issue of guilt, while at the same time the State agreed that Fugere was, in fact, NGI-does not alter any of the foregoing conclusions in this paragraph.
¶22 Also central to Fugere's argument is the notion that an NGI defendant's civil commitment is a form of punishment. It is not. A civil commitment under WIS. STAT. § 971.17 is not a sentence. State v. Harr , 211 Wis. 2d 584, 587, 568 N.W.2d 307 (Ct. App. 1997) (reasoning that the defendant's NGI commitment was "plainly, not a sentence" because "[he had] not been convicted or 'found guilty' of a crime"). A sentence is defined as "the judgment of a court by which the court imposes the punishment or penalty provided by statute for the offense upon the person found guilty ." Id. (citation omitted) (emphasis added). An NGI commitment is plainly not a sentence within the meaning of that definition, as the defendant has been found not guilty or, as here, the State has stipulated as such. See id.
¶23 The main objective of a commitment under WIS. STAT. § 971.17 is not punishment, but the protection of the public. State v. Szulczewski , 216 Wis. 2d 495, 504, 574 N.W.2d 660 (1998) (citing State v. Randall , 192 Wis. 2d 800, 833, 532 N.W.2d 94 (1995) ); State v. Devore , 2004 WI App 87, ¶ 10, 272 Wis. 2d 383, 679 N.W.2d 890. Treatment of an NGI defendant is also a significant consideration in ordering a civil commitment. Szulczewski , 216 Wis. 2d at 504, 574 N.W.2d 660 ; see also sec. 971.17(3). After a defendant is found NGI, the *159 circuit court orders institutional care "if it finds by clear and convincing evidence that conditional release of the person would pose a significant risk of bodily harm to himself or herself or to others or of serious property damage." Sec. 971.17(3). In making this determination, the court may consider factors including the defendant's access to, and likelihood of taking, necessary medications, and arrangements for treatments other than medication. Id. It is well established in contexts similar to a § 971.17 commitment that the civil commitment of an individual in order for him or her to receive such treatment and related services, and to protect the individual or the public, is not penal in nature.[8] Given that a civil commitment is not in the nature of a punishment, such a notion cannot be a basis upon which to conclude a circuit court must advise a defendant of the potential length of such a commitment in order for an NGI plea to be considered knowing, intelligent, and voluntary.
¶24 As a variation on his "punishment" argument, Fugere also argues that "[w]hen the defendant enters an NGI plea, ... the court is required to inform the defendant about the maximum length of commitment because it is a direct consequence of the plea with an automatic effect on the range of punishment." We have already rejected the notion that a civil commitment is a "punishment." To the extent *136 that Fugere's *160 "direct consequence" argument is an independent one, we also reject it. Fugere appears to claim his civil commitment was a direct consequence of his NGI plea because the circuit court's acceptance of his plea necessarily precluded it from issuing a criminal sentence. For the reasons previously stated, see supra ¶¶20-21, that Fugere's plea combined both phases does not compel a conclusion that he needed to be correctly advised of his civil commitment range for his plea to be knowing, intelligent, and voluntary.
¶25 In all, the record demonstrates that the circuit court informed Fugere of the direct consequences of his plea, including the potential sixty-year prison sentence. The circuit court's incorrect statement regarding Fugere's maximum potential period of civil commitment does not render Fugere's NGI plea unknowing, unintelligent, or involuntarily. As such, there was no manifest injustice, and Fugere is not entitled to withdraw his plea.
By the Court. -Orders affirmed.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Nonetheless, we of course encourage any court that attempts to inform a defendant about the range of his or her maximum civil commitment (if he or she is found to lack mental responsibility) to do so accurately.

As explained in more detail later in this opinion, if a defendant couples a plea of not guilty with an NGI plea, the proceedings are bifurcated, with the first phase of the trial determining the defendant's guilt, and the second phase determining the defendant's mental responsibility. Wis. Stat. § 971.165 ; State v. Magett , 2014 WI 67, ¶ 33, 355 Wis. 2d 617, 850 N.W.2d 42. Here, Fugere entered a plea of NGI without an accompanying not-guilty plea, thus waiving his right to the first phase of trial which would determine whether he in fact committed the alleged offense.

After the circuit court ordered his commitment, Fugere petitioned for conditional release. The court determined that such release was appropriate. It ordered the Department of Health Services (DHS) to present a conditional release plan. However, DHS informed the court that Fugere had committed a violation while at the Mendota Mental Health Institute and had been referred for Wis. Stat. ch. 980 proceedings. As a result, DHS suspended planning for Fugere's conditional release. During the same time, Fugere sought and was granted extensions of his time for filing a postdisposition motion or notice of appeal in this action.

The parties stipulated to Fugere's awareness, or lack thereof, on these matters. As such, the State does not challenge whether, despite Fugere being misinformed during the plea hearing regarding the maximum civil commitment term he faced, he somehow otherwise knew of the correct maximum term at the time he pled. See State v. Bangert , 131 Wis. 2d 246, 283, 389 N.W.2d 12 (1986) (holding that although a defendant's understanding must be measured at the time the plea is entered, the proper inquiry is whether the defendant received actual notice of the nature of the charge, and therefore "the reviewing court may look to the entire record to make such measurement"); see also State v. Finley , 2016 WI 63, ¶ 81, 370 Wis. 2d 402, 882 N.W.2d 761 (explaining that "a circuit court's failure to correctly advise a defendant in the plea colloquy of the potential punishment he [or she] faces does not automatically permit a defendant to withdraw his or her plea" because if the defendant knew the potential punishment and was given the sentence the circuit court advised, he or she is not entitled to plea withdrawal). Given our conclusions in this opinion, an inquiry into Fugere's actual knowledge of the maximum civil commitment term would have been unnecessary.

Wisconsin Stat. § 971.08(1) provides that, "[b]efore the circuit court accepts a plea of guilty or no contest," it must personally address the defendant to determine whether he or she is entering the plea voluntarily with an understanding of the nature of the charge. See State v. Shegrud , 131 Wis. 2d 133, 136, 389 N.W.2d 7 (1986) (noting that the statutory language applies only to guilty and no-contest pleas).

As relevant to the issues in this appeal, under Bangert , a circuit court must "determine a defendant's understanding of the nature of the charge at the plea hearing." Bangert , 131 Wis. 2d at 267, 389 N.W.2d 12. Bangert characterized this obligation as a duty to: (1) "inform a defendant of the nature of the charge or, alternatively, to first ascertain that the defendant possesses accurate information about the nature of the charge"; and (2) "ascertain the defendant's understanding of the nature of the charge." Id.

See, e.g. , State v. LeMere , 2016 WI 41, ¶ 56, 368 Wis. 2d 624, 879 N.W.2d 580 ("The rehabilitative aspect of Chapter 980 commitment also takes it out of the 'penalty' category. Chapter 980 'creates a civil commitment procedure primarily intended to protect the public and to provide concentrated treatment to convicted sexually violent persons, not to punish the sexual offender .' " (emphasis added) (quoting State v. Carpenter , 197 Wis. 2d 252, 258, 541 N.W.2d 105 (1995) ) ).