# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP2258-CR |
| COMPLETE TITLE: | State of Wisconsin,<br>   Plaintiff-Respondent,<br>  v.<br>Corey R. Fugere,<br>   Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 381 Wis. 2d 142,911 N.W.2d 127
PDC No:2018 WI App 24 - Published

| | |
|---|---|
| OPINION FILED: | March 28, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 24, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Chippewa |
| JUDGE: | Roderick A. Cameron |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | A.W. BRADLEY, J. dissents, joined by ABRAHAMSON, J. and DALLET, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Kathilynne A. Grotelueschen*, assistant state public defender. There was an oral argument by *Kathilynne A. Grotelueschen*.

For the plaintiff-respondent, there was a brief filed by *Luke N. Berg*, deputy solicitor general. With whom on the brief *Tiffany M. Winter*, assistant attorney general, *Misha Tseytlin*, solicitor general, and *Brad D. Schimel*, attorney general. There was an oral argument by *Luke N. Berg*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP2258-CR
(L.C. No. 2015CF169)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent,

    v.

Corey R. Fugere,

    Defendant-Appellant-Petitioner.

**FILED**

**MAR 28, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed*.

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals, State v. Fugere, 2018 WI App 24, 381 Wis. 2d 142, 911 N.W.2d 127, affirming the Chippewa County circuit court's order.[1] The circuit court's order denied Corey R. Fugere's ("Fugere") motion to withdraw his plea of not guilty by reason of mental disease or defect ("NGI"), which was based on the circuit court providing inaccurate information to Fugere concerning the maximum period of civil commitment should he prevail on his affirmative defense

---

[1] The Honorable Roderick Cameron presided.

to the criminal charges. The court of appeals affirmed the circuit court, and we affirm the court of appeals.

¶2 We conclude that a circuit court is not required to inform an NGI defendant of the maximum possible term of civil commitment at the guilt phase: (1) because a defendant who prevails at the responsibility phase of the NGI proceeding has proven an affirmative defense in a civil proceeding, avoiding incarceration, and is not waiving any constitutional rights by so proceeding in that defense; and (2) because an NGI commitment is not punishment, but rather a collateral consequence to one who successfully mounts an NGI defense to criminal charges. We therefore decline to exercise our superintending and administrative authority to require circuit courts to advise NGI defendants of the maximum period of civil commitment.

¶3 Fugere also requests that this court conclude that the circuit court's error was not harmless with respect to the misinformation provided to him concerning potential civil consequences should he prevail in his defense. The circuit court here provided accurate information to Fugere regarding the maximum possible term of imprisonment but inaccurate information regarding commitment, so we thus address whether the circuit court's error otherwise entitles Fugere to withdraw his NGI plea. We conclude that the circuit court's error was harmless because it was unrelated to the guilt phase of the NGI defense, and instead, the inaccurate information pertained to the potential civil commitment at the responsibility phase. Additionally, Fugere received the benefit of his plea agreement

2

with the State and otherwise understood the consequences of prevailing on an NGI defense as he was already civilly committed for an unrelated charge.  Thus, there was no manifest injustice, and we affirm the court of appeals.

## I.   FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶4   In April 2015 Fugere was charged with four counts of first-degree sexual assault of a child under the age of 12.  The complaint alleged that in 2008, when Fugere was 17 years old, he and another individual sexually assaulted an eight-year-old girl.  At the time these charges were filed, however, Fugere was serving a commitment to the Mendota Mental Health Institute because of a different sexual assault charge for which Fugere had previously been found NGI.

¶5   A few months after Fugere was charged, the State and Fugere reached a plea agreement.  Pursuant to the agreement, Fugere would plead NGI to one count of first-degree sexual assault of a child under the age of 12, and the remaining charges were dismissed but read in.  As a result, Fugere would waive his right to trial regarding guilt, admit that there was a factual basis that he committed the sexual assault, and the State and Fugere would stipulate that, based on the other case information and findings, Fugere lacked substantial capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law due to a mental disease or defect.   The parties agreed to recommend that the circuit court order a pre-dispositional investigation report and that

Fugere be civilly committed for 30 years to the State of Wisconsin Department of Health Services ("DHS").[2]

¶6 On August 24, 2015, Fugere filed an initialed and signed "Plea Questionnaire/Waiver of Rights" form and entered an NGI plea to the single count. At the plea hearing, the circuit court conducted a plea colloquy and, among other things, confirmed with Fugere that he understood the nature of the charges, that he was waiving his constitutional rights, including his right to a jury trial, and that the maximum penalty for first-degree sexual assault was 60 years.

¶7 During the plea colloquy, the circuit court also addressed Fugere's NGI plea. The court, the State, and Fugere's attorney all misinformed Fugere of the potential maximum period of civil commitment. The following exchange occurred:

> THE COURT: You are not actually going [to] be found guilty of the charge today. You are going to be found [not] guilty by reason of mental disease or defect, which is a bit different, but it means you could be placed on supervision for up to 30 years.
>
> [THE STATE]: Sixty years is the maximum.
>
> THE COURT: Sixty years, but the recommendation is 30 years, do you understand that?
>
> [FUGERE]: Yes.

Fugere informed the circuit court that he was aware of the 30-year recommendation even though 60 years is the maximum. Fugere

---

[2] Additionally, as part of the plea agreement, Fugere agreed to submit a DNA sample, but that is not significant to this appeal.

confirmed that he had been on conditional release on another case and that he understood how conditional release worked. Fugere indicated that he did not have any questions. Fugere's attorney confirmed that Fugere would be exposed "to some 30 more years of supervision, could possibly be 60 years." His lawyer confirmed that Fugere understood that "if he violates any rules of supervision, he could end up back at Mendota or Winnebago during the next 60 years."

¶8 The circuit court accepted Fugere's NGI plea, adopted the parties' joint recommendation, and ordered that Fugere be committed for 30 years and that a pre-dispositional investigation be prepared. The order of commitment specified that Fugere's commitment was to commence on August 24, 2015, and run concurrent with any other NGI commitments he was serving.

¶9 At the post-dispositional placement hearing on October 15, 2015, the court ordered Fugere be placed in institutional care. At the hearing, Fugere did not contest the report's findings and admitted he was "not ready" for conditional release. Fugere stated that he hoped he would be fit for conditional release in six months.

¶10 Just over six months later, on April 29, 2016, Fugere filed a petition for conditional release with the circuit court. The circuit court ordered an examination by an independent psychologist, who recommended that Fugere be conditionally released. On June 29, 2016, the circuit court granted conditional release subject to finding a suitable group home. The DHS was to provide a release plan within 60 days.

¶11 On August 5, 2016, prior to the 60-day time period elapsing, the DHS informed the circuit court that it was "temporarily suspend[ing] planning for the conditional release" because the State intended to file a complaint against Fugere alleging that he should be separately committed as a sexually violent person under Wis. Stat. ch. 980 (2015-16).[3] The DHS further notified the circuit court that Fugere had recently committed a "new violation" by "having sexual relations with a peer at Mendota." The DHS additionally stated that it intended to revoke Fugere's conditional release following resolution of the State's chapter 980 petition.

¶12 On September 15, 2016, Fugere filed a postconviction motion to withdraw his NGI plea arguing that it was not knowingly, intelligently, and voluntarily entered. Fugere asserted that he was entitled to withdraw his plea because he was misinformed of the maximum civil commitment period. Specifically, he averred that the circuit court incorrectly informed him that he faced a maximum of 60 years, when the actual maximum was 40 years' commitment and that the circuit court inaccurately referenced supervision. In response, the State argued that an NGI commitment is not a punishment, and therefore the circuit court is not required to advise Fugere of his maximum possible commitment to render Fugere's plea knowingly, intelligently, and voluntarily given. The State

---

[3] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

6

further argued that under State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), defendants must be informed only of the maximum statutory punishment they face. The State contended that the circuit court correctly informed Fugere of the maximum statutory punishment he faced if his NGI defense failed, and therefore fulfilled the circuit court's duty at the plea colloquy. The State argued that no "manifest injustice" resulted because Fugere received the very 30-year commitment term he bargained for. At a hearing on November 9, 2016, the circuit court agreed with the State and denied Fugere's motion. The court concluded:

> I think, given the fact that there's no requirement to provide a defendant the maximum amount of time for a confinement or commitment time on an NGI when he's told he's going to get a certain amount against that amount, I think that's distinguishable from the maximum amount of time partly because confinement is not a sentence and partly because he's getting exactly what he expected to get regardless of how much more time he could have gotten. So I believe under that analysis, that the motion is to be denied.

¶13 Fugere appealed the circuit court's ruling. In an opinion issued on March 6, 2018, the court of appeals affirmed the circuit court. Fugere, 381 Wis. 2d 142, ¶2. It held "that circuit courts need not advise a defendant pleading NGI of the potential range of civil commitment he or she will face if found not mentally responsible for his or her crimes, much less do so correctly." Id., ¶19. The court of appeals explained the unique process that occurs with NGI pleas, which consists of two phases: the guilt phase, and the responsibility phase. Id.,

¶13. The court of appeals concluded that the requirements established by Bangert and its progeny apply only to the guilt phase of an NGI proceeding. In other words, the court of appeals concluded that a defendant must be informed only of the maximum punishment the defendant faces if he were to be found guilty, which implicates only the guilt phase. Id., ¶19. Noting that Wisconsin courts have routinely "held that the responsibility phase of an NGI trial is not part of a criminal trial," the court of appeals further concluded that "[t]he same constitutional rights are not implicated or waived during the mental responsibility phase." Id. The court of appeals also expressed that a defendant's right to assert an NGI defense is a statutory right, not a constitutional right. Id.

¶14 As a result, the court of appeals concluded as follows:

> In all, the record demonstrates that the circuit court informed Fugere of the direct consequences of his plea, including the potential sixty-year prison sentence. The circuit court's incorrect statement regarding Fugere's maximum potential period of civil commitment does not render Fugere's NGI plea unknowing, unintelligent, or involuntarily [sic]. As such, there was no manifest injustice, and Fugere is not entitled to withdraw his plea.

Id., ¶25.

¶15 On March 27, 2018, Fugere filed a petition for review with this court. On September 4, 2018, this court granted Fugere's petition.

8

## II. STANDARD OF REVIEW

¶16 When a defendant seeks to withdraw a guilty plea after sentencing, the defendant must prove "by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" State v. Brown, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (citing State v. Thomas, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605 N.W.2d 836). A defendant can meet that burden by showing that he or she did not knowingly, intelligently, and voluntarily enter the plea. Id. (citing State v. Trochinski, 2002 WI 56, ¶15, 253 Wis. 2d 38, 644 N.W.2d 891; State ex rel. Warren v. Schwarz, 219 Wis. 2d 615, 635-36, 579 N.W.2d 698 (1998); State v. Krawczyk, 2003 WI App 6, ¶9, 259 Wis. 2d 843, 657 N.W.2d 77).

¶17 Whether a guilty plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact. State v. Muldrow, 2018 WI 52, ¶24, 381 Wis. 2d 492, 912 N.W.2d 74. This court upholds a circuit court's findings of fact unless clearly erroneous, and "[d]etermines independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." Brown, 293 Wis. 2d 594, ¶19.

¶18 Fugere asserts that there were deficiencies in the plea colloquy conducted by the circuit court in violation of Wis. Stat. § 971.08. Whether Fugere shows deficiencies in the plea colloquy that establish a violation of § 971.08, is a question of law that this court reviews de novo. See Brown, 293 Wis. 2d 594, ¶21.

9

### III. ANALYSIS

#### A. General Principles Of Pleas And Plea Colloquies

¶19 We begin by addressing the basic principles underlying pleas and plea colloquies. Wisconsin Stat. § 971.06 recognizes four distinct pleas that can arise from criminal matters: (1) guilty; (2) not guilty; (3) no contest, which is subject to the court's approval; and (4) "[n]ot guilty by reason of mental disease or defect." § 971.06(1). A defendant must enter a plea to a criminal charge "knowing[ly], voluntar[ily], and intelligent[ly]." Muldrow, 381 Wis. 2d 492, ¶1; see also Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005). For a defendant's plea to be "knowing, intelligent, and voluntary," the defendant must be fully aware of "any direct consequences" of the plea. Muldrow, 381 Wis. 2d 492, ¶1 (citing Brady v. United States, 397 U.S. 742, 755 (1970)). A "direct consequence" is defined as "one that has a definite, immediate, and largely automatic effect on the range of a defendant's punishment." State v. Byrge, 2000 WI 101, ¶60, 237 Wis. 2d 197, 614 N.W.2d 477 (citing State v. Bollig, 2000 WI 6, ¶16, 232 Wis. 2d 561, 605 N.W.2d 199).

¶20 On the other hand, information regarding "collateral consequences" of a defendant's plea "is not a prerequisite to entering a knowing and intelligent plea." Id., ¶61 (citing Warren, 219 Wis. 2d at 636). "Collateral consequences are indirect and do not flow from the conviction." Id. In evaluating whether a consequence of a defendant's plea is direct or collateral, courts look to whether the consequence is a

10

punishment. See Bollig, 232 Wis. 2d 561, ¶27 (holding "that Wisconsin's sex offender registration requirements do not constitute punishment," and thus are "a collateral consequence").

¶21 The Wisconsin Statutes also impact a circuit court's role in a plea colloquy. Under Wis. Stat. § 971.08(1), circuit courts must conduct a plea colloquy with a defendant who pleads guilty or no contest, in the interest of ensuring that the defendant's plea is given knowingly, intelligently, and voluntarily. § 971.08(1)(a). Before the circuit court accepts a guilty or no contest plea, it must do all of the following:

> (a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.
>
> (b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.
>
> (c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."
>
> (d) Inquire of the district attorney whether he or she has complied with s. 971.095(2).[4]

---

[4] Wisconsin Stat. § 971.095(2) states as follows:

> In any case in which a defendant has been charged with a crime, the district attorney shall, as soon as practicable, offer all of the victims in the case who have requested the opportunity an opportunity to confer with the district attorney concerning the
>
> (continued)

11

§ 971.08(1).

¶22 As this court has explained, the plea colloquy duties imposed on courts by Wis. Stat. § 971.08 are not "a constitutional requirement," but rather, "a statutory imperative." Bangert, 131 Wis. 2d at 266. However, "[t]he faithful discharge of these duties is the best way . . . to demonstrate the critical importance of pleas in our system of justice and to avoid constitutional problems." Brown, 293 Wis. 2d 594, ¶23.

¶23 Although the language in Wis. Stat. § 971.08 does not indicate that it applies to NGI pleas, as § 971.08 expressly refers only to "plea[s] of guilty or no contest," this court has stated that an NGI plea "closely parallels a plea of no contest." State v. Shegrud, 131 Wis. 2d 133, 137, 389 N.W.2d 7 (1986). This court has concluded that a defendant must be informed of "the nature of the charge" and the "potential punishment." Id. at 138.

¶24 A defendant who wishes to withdraw a guilty plea after sentencing bears the heavy burden to demonstrate by "clear and convincing evidence" that withdrawal is necessary to avoid "manifest injustice." State v. Finley, 2016 WI 63, ¶58, 370

prosecution of the case and the possible outcomes of the prosecution, including potential plea agreements and sentencing recommendations. The duty to confer under this subsection does not limit the obligation of the district attorney to exercise his or her discretion concerning the handling of any criminal charge against the defendant.

Wis. 2d 402, 882 N.W.2d 761; State v. Sulla, 2016 WI 46, ¶24, 369 Wis. 2d 225, 880 N.W.2d 659. A plea is "manifestly unjust" in violation of the Due Process Clause of the United States Constitution if it was not entered "knowingly, intelligently, and voluntarily." Stumpf, 545 U.S. at 182-83. While Bangert and Wis. Stat. § 971.08 inform a court's duties when it comes to properly taking a plea, an improper colloquy does not automatically mandate withdrawal. State v. Cross, 2010 WI 70, ¶¶32-40, 326 Wis. 2d 492, 786 N.W.2d 64; State v. Taylor, 2013 WI 34, ¶¶32-42, 48-54, 347 Wis. 2d 30, 829 N.W.2d 482. An improper colloquy may entitle a defendant to a hearing however, and there, the State bears the burden of establishing that the guilty plea was indeed voluntary. Brown, 293 Wis. 2d 594, ¶¶36-41.

¶25 In the case at issue, Fugere argues that he, as a defendant who entered an NGI plea but was not properly informed of the accurate maximum length of a civil commitment, should be entitled to withdraw that plea on the grounds that it was not knowing, intelligent, and voluntary.

## B. NGI Procedures

¶26 "[A] criminal defendant's right to an NGI defense is a statutory right that is not guaranteed by either the United States or Wisconsin Constitutions." State v. Magett, 2014 WI 67, ¶32, 355 Wis. 2d 617, 850 N.W.2d 42. NGI pleas "may be joined with a plea of not guilty." Wis. Stat. § 971.06(1)(d). When a defendant enters this plea, the case is bifurcated into two phases: the guilt phase and the responsibility phase. See

13

Magett, 355 Wis. 2d 617, ¶39. Only if a defendant is found guilty in the first phase does the court withhold entry of judgment of guilt and the trial proceeds to the responsibility phase. Wis. Stat. § 971.165(1)(d). The responsibility phase "is not a criminal proceeding," but "is something close to a civil trial." Magett, 355 Wis. 2d 617, ¶33. Unlike a criminal trial, the verdict need not be unanimous, the defendant bears the burden of proof to establish this affirmative defense by a preponderance of the evidence, and the circuit court may direct a verdict. Id., ¶¶37-39.

¶27 On the other hand, a defendant may choose to plead NGI without also pleading not guilty, also known as a "standalone NGI plea." See Wis. Stat. § 971.06(1)(d). In so doing, the defendant "admits that but for lack of mental capacity, the defendant committed all the essential elements of the offense charged in the indictment, information or complaint." Id. The defendant is then found guilty of the elements of the crime(s) and the responsibility phase is left for trial. State v. Lagrone, 2016 WI 26, ¶29, 368 Wis. 2d 1, 878 N.W.2d 636. As Fugere points out, this court has exercised its superintending and administrative authority with regard to plea colloquy requirements in the past in both Bangert and Shegrud. The court has concluded that in the first phase of an NGI plea, the court must "address the defendant personally to determine whether the defendant is entering the plea voluntarily [and] with an understanding of the nature of the charge. . . . [T]he procedures delineated in Bangert shall apply . . . ." Shegrud,

14

131 Wis. 2d at 138. Also, as was the case here, the parties may agree to waive the trial on responsibility and stipulate that the defendant should be found NGI.

¶28 Under Wis. Stat. § 971.165(3)(b), if the defendant's NGI defense succeeds, "the court shall enter a judgment of not guilty by reason of mental disease or defect," and "shall thereupon proceed under s. 971.17."[5] If the defendant's NGI defense is unsuccessful, "the court shall enter a judgment of conviction and shall either impose or withhold sentence under s. 972.13(2)." § 971.165(3)(a).

¶29 Defendants in criminal cases who are later found NGI are civilly committed rather than criminally sentenced or sanctioned. If commitment occurs, the length of that commitment is not to exceed the maximum sentence for the charged offense plus penalty enhancements subject to statutory credit provisions. Wis. Stat. § 971.17(1)(b). As a general rule, the length of commitment is about two-thirds of the maximum potential sentence of imprisonment.[6] In addition, a defendant

---

[5] Wisconsin Stat. § 971.17 governs the "[c]ommitment of persons found not guilty by reason of mental disease or mental defect."

[6] Under Wis. Stat. § 971.17(1), an NGI defendant's maximum possible commitment period depends on the nature of the underlying offense. NGI defendants who commit a felony prior to July 30, 2002, or who commit a misdemeanor, may receive a maximum commitment period of two-thirds the maximum term of imprisonment that could be imposed. § 971.17(1)(a) & (d). NGI defendants who commit a felony on or after July 30, 2002, may receive a commitment term up to but not exceeding the maximum term of imprisonment that could be imposed. § 971.17(1)(b).

(continued)

15

who succeeds on an NGI defense and is committed may file a petition for conditional release every six months, and if on conditional release, may file a petition to terminate the underlying order of commitment. See §§ 971.17(4), (5).

## C. Bangert And Shegrud

¶30 Fugere asserts that this court should exercise its superintending and administrative authority to clarify or extend Bangert and Shegrud. He argues that an NGI plea cannot be knowing, intelligent, or voluntary when a circuit court inaccurately informs an NGI defendant of the maximum term of commitment or refers to commitment as supervision. We consider the unique nature of an NGI plea and the fact that the first phase, the admission of guilt, must be knowing, intelligent, and voluntary as the defendant is waiving, among other things, the right to a jury trial and putting the State to its high burden of proving each and every element of the offense charged. In the guilt phase, the defendant waives constitutional rights and must understand the nature of the charge and the potential criminal punishment. This understanding is important because if the defendant's affirmative defense fails at the second phase, the defendant's criminal sentence could be the maximum term of imprisonment. Stated differently, a defendant who does not succeed in proving the affirmative defense at the responsibility

---

Lastly, NGI defendants who commit a felony punishable by life imprisonment may receive up to a lifetime commitment term. § 971.17(1)(c).

phase is convicted and sentenced up to the maximum possible term of imprisonment. The circuit court here informed the defendant of the maximum possible term of imprisonment, the plea questionnaire outlined the same, and the record reflects a discussion of that maximum.[7]

¶31 Fugere's argument, however, relates not to the potential criminal penalty if his NGI defense fails. His argument is that if he succeeds in his affirmative defense and is found NGI, the court must have previously informed him of the civil consequences of proving that defense. Fugere's argument focuses then not on whether the circuit court properly informed him of the consequences of the guilt phase of the plea. His argument centers on the circuit court being required, at the guilt phase, to advise not only of the maximum criminal penalty but also the potential maximum civil commitment. Civil commitment is the benefit Fugere seeks, but one that becomes available only if he succeeds in affirmatively proving his legal lack of responsibility.

¶32 The responsibility phase of the proceedings, however, is drastically different from the guilt phase. The responsibility phase is the defendant's opportunity to present an affirmative defense, a legislative preference provided in the statutory right to a separate trial regarding mental

---

[7] See State v. Reyes Fuerte, 2017 WI 104, 378 Wis. 2d 504, 904 N.W.2d 773; State v. Taylor, 2013 WI 34, 347 Wis. 2d 30, 829 N.W.2d 482; and State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64.

responsibility. If successful at this phase——at which the defendant bears the burden of proving his defense by a preponderance of the evidence to a less than unanimous jury——the outcome is that he would be civilly committed, not criminally sentenced. The maximum civil commitment is of a shorter duration, less restrictive than imprisonment, subject to review on a regular basis, and is not "punishment" but rather, is "to treat the NGI acquittee's mental illness and to protect the acquittee and society from the acquittee's potential dangerousness." State v. Szulczewski, 216 Wis. 2d 495, 504, 574 N.W.2d 660 (1998). The defendant who succeeds in proving this affirmative defense is hoping for civil commitment rather than criminal punishment. This court has never required circuit courts to conduct a colloquy with defendants to inform them of the benefits of successfully proving an affirmative defense. While courts should provide accurate information, we decline to extend Bangert or Shegrud to require circuit courts to advise a defendant of the potential consequences of prevailing on an affirmative defense at the responsibility phase of an NGI trial. The circuit court has a duty to advise of punishment at the guilty plea phase of an NGI, namely, the potential maximum term of imprisonment.

### 1. Constitutional rights are not waived at the responsibility phase.

¶33 To be clear, defendants who submit a standalone NGI plea waive constitutional rights only at the guilt phase, not the responsibility phase. The defendant who chooses, by NGI

18

plea at the guilt phase, not to challenge that he committed the charged criminal offense, enters a plea which operates like a no contest plea. See Shegrud, 131 Wis. 2d at 137. The case then proceeds to the responsibility phase——a noncriminal proceeding—— where the defendant presents an affirmative defense that, if proven, may lead to civil commitment instead of incarceration.[8] For those who might argue that a civil commitment is a significant consequence for which a defendant should be advised, they fail to recognize the unique position of an NGI defendant who otherwise faces imprisonment unless that defendant can prove he or she is instead entitled to a civil commitment.

¶34 This distinction——between criminal and civil proceedings and possible imprisonment versus civil commitment—— has significance. Consistent with Bangert and Shegrud, circuit courts must inform defendants who enter a standalone NGI plea of the nature of the charges, the nature of the constitutional rights the defendant is waiving, and the maximum potential punishment if the defendant's NGI defense fails. See Bangert, 131 Wis. 2d at 261-62; Shegrud, 131 Wis. 2d at 136-39. This fulfills the constitutional requirements underlying a defendant's plea at the guilt phase of the proceedings. Fugere does not dispute that the circuit court fulfilled these requirements at the guilt phase, and the record reflects that at the plea colloquy hearing the circuit court properly informed

---

[8] In the case at issue, the State agreed that Fugere could successfully mount an NGI defense.

19

Fugere of the nature of the criminal charges against him, the nature of the constitutional rights he was waiving, and the maximum term of imprisonment. Fugere argues though that courts should be required to go further and advise not just of the potential punishment should his defense fail, but also of the potential civil consequence to him should his defense succeed.

¶35 Defendants do not waive any constitutional rights pertaining to the responsibility phase of an NGI proceeding. At the responsibility phase, defendants have the burden to prove a statutorily-created affirmative defense and are not making a concession of any kind. See Wis. Stat. § 971.15. NGI defendants hope to prove that they are not mentally responsible for the crime they have already been found guilty of committing. There is no requirement that any defendant raise an NGI defense. Defendants benefit from the successful presentation of an NGI defense. At the responsibility phase, a defendant has already been found guilty and absent success at that phase, faces criminal punishment not civil commitment. Indeed, a successful NGI defendant avoids incarceration in favor of civil commitment and may seek conditional release within six months of his initial commitment date, and commitment, unlike incarceration, could be terminated entirely. In addition, NGI proceedings are notably distinguishable from other forms of civil commitment such as those arising under Wis. Stat. ch. 51 or ch. 980, where the government, not the defendant, pursues the commitment and carries the burden of proof. In the context of an NGI proceeding, the defendant willfully seeks commitment and bears

20

the burden of proof to receive the benefit of a successful NGI defense.

¶36 Our conclusion that NGI defendants do not waive any constitutional rights at the responsibility phase of an NGI proceeding is buttressed by this court's decision in Lagrone, 368 Wis. 2d 1. There, as in this case, Lagrone did not challenge the plea colloquy that occurred regarding the guilt phase of the NGI proceedings. Id., ¶53. Instead, Lagrone argued that he was unaware that by entering a standalone NGI plea, he was waiving his fundamental right to testify at a criminal trial regarding the validity of the charges against him. Id. This court held that circuit courts are not required to conduct a colloquy with defendants regarding whether or not they wish to testify during the responsibility phase of an NGI proceeding. Id., ¶¶51-56. Specifically, this court stated that "the fundamental right to testify in one's own behalf as a defendant in a criminal case does not exist at the responsibility phase of bifurcated NGI proceedings because that phase is a noncriminal proceeding to which defendants possess no constitutional right." Id., ¶51 (emphasis added). The same reasoning is applicable here. Defendants do not waive constitutional rights in this non-criminal, responsibility phase.

### 2. NGI commitments are not punitive in intent or effect.

¶37 Circuit courts are required only to "notify the defendant of any direct consequence of his guilty plea."

21

Muldrow, 381 Wis. 2d 492, ¶1 (citing Brady, 397 U.S. at 755). "We have identified direct consequences of a plea as being those that impose punishment." Id. We next evaluate whether commitment is punitive and thus, a direct consequence of a plea. This court recently adopted the "intent-effects test" for determining whether a consequence of a plea is punitive. Id., ¶35.

¶38 The United States Supreme Court first articulated the intent-effects test in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-70 (1963). The intent-effects test has two parts. Courts look to the "statute's primary function" to determine the statute's intent. Id. at 169. If a law's intent is not punitive, the court then considers whether it is nonetheless punitive in effect. Courts consider whether the statute's effect is "penal or regulatory in character." Id. at 168-69. In evaluating effect, courts look to seven, non-exhaustive factors:

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment——retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned . . . .

Id.

22

¶39 We conclude that applying the intent-effects test further demonstrates that commitment resulting from a successful NGI defense is not a punishment, and thus is not a direct consequence of a defendant's NGI plea. The parties agree that NGI commitments are not intended to be punishments. Indeed, this court has already held that NGI commitments are not intended to be punishments, holding that their purpose is "two-fold: to treat the NGI acquittee's mental illness and to protect the acquittee and society from the acquittee's potential dangerousness." Szulczewski, 216 Wis. 2d at 504 (citing State v. Randall, 192 Wis. 2d 800, 833, 532 N.W.2d 94 (1995)). By contrast, this court stated that judgments of conviction and sentences are "designed to accomplish the objectives of deterrence, rehabilitation, retribution and segregation." Id. (citing Wayne R. LaFave & Austin W. Scott, Jr., 1 Substantive Criminal Law § 1.5, at 30-36 (1986)). Thus, we conclude that NGI commitments are not intended to serve as punishment under the intent portion of the intent-effects test.

¶40 That leaves the question of whether NGI commitments have a punitive effect. Fugere focuses on factors (1), (5), and (7) in claiming that NGI commitments have a punitive effect. Applying all seven factors outlined by the United States Supreme Court in Mendoza-Martinez, we conclude that NGI commitments do not have a punitive effect.

¶41 First, Fugere is correct that NGI commitments involve "an affirmative disability or restraint." Defendants that successfully plead NGI are committed, which involves confinement

23

at a mental health institution for treatment. This is plainly an affirmative restraint. The State concedes as much, but argues that "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." We agree. However, that does not change the fact that NGI committees are affirmatively restrained.

¶42 Second, measures such as NGI commitments have historically been regarded as non-punitive in nature. In addition to this court's statement in Szulczewski regarding the purpose of NGI commitments, the United States Supreme Court has recognized that "measures to restrict the freedom of the dangerously mentally ill" serve a "legitimate nonpunitive governmental objective and has been historically so regarded." Kansas v. Hendricks, 521 U.S. 346, 363 (1997) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). The Supreme Court further recognized "the confinement of 'mentally unstable individuals who present a danger to the public' as one classic example of nonpunitive detention." Id. (citing Salerno, 481 U.S. at 748-49).

¶43 Third, NGI commitments do not "come into play only on a finding of scienter." As the State correctly notes, NGI commitments are necessarily premised on the absence of scienter, which renders an NGI defendant not legally culpable for the underlying criminal conduct. See Wis. Stat. § 971.15(1).

¶44 Fourth, NGI commitments do not serve the "traditional aims of punishment——retribution and deterrence." Rather, NGI commitments serve to treat defendants' mental illness and

24

protect the public. Such ends do not fit the traditional goals of retribution and deterrence associated with criminal convictions, judgments, and sentencing. See Szulczewski, 216 Wis. 2d at 504; see also Jones v. United States, 463 U.S. 354, 368-69 (1983) (explaining that "insanity acquittees" are not convicted, and thus not punished, and that "confinement rests on [an acquittee's] continuing illness and dangerousness").

¶45 Fifth, NGI commitments require underlying behavior that results in criminal charges being brought against the defendant. Though a successful NGI defense obviates the defendant's criminal responsibility, criminal conduct is an inherent underpinning of an NGI commitment.

¶46 Sixth, NGI commitments certainly carry an alternative, non-punitive purpose. As this court stated in Muldrow, this "is considered the most significant factor in determining whether the effect of a sanction is punitive." Muldrow, 381 Wis. 2d 492, ¶57 (internal quotation marks omitted). Here, as noted above, the purpose of NGI commitments is to treat the defendant and protect the public. NGI commitments thus carry a strong alternative and non-punitive purpose. Similarly, this court in Muldrow held that lifetime GPS tracking for sex offenders had "[t]he non-punitive purpose of . . . protecting the public from future sex offenses," as it "ensures law enforcement will have ready access to evidence of an offender's whereabouts." Id., ¶¶57-59. The rationale here is even stronger——unlike GPS tracking, NGI commitments keep defendants

25

away from the public and provide treatment for defendants' mental illness.

¶47 Seventh, NGI commitments are not excessive in relation to their rehabilitative and protective purposes. In Wisconsin, NGI commitment terms may not exceed the maximum confinement term of the charged criminal offense. For felonies committed on or after July 30, 2002, NGI commitments may at most equal "the maximum term of confinement in prison that could be imposed" on a defendant if his NGI defense failed. Wis. Stat. § 971.17(1)(b). For crimes committed prior to July 30, 2002, courts may at most impose a term of commitment equaling two-thirds of the maximum term of confinement that could be imposed if the NGI defense failed. § 971.17(1)(a). Sections 971.17(1)(a) and (1)(b) set the ceiling, but nothing in § 971.17 requires an NGI commitment term to mirror the maximum term of confinement a defendant faces if his NGI defense is unsuccessful.

¶48 Further, NGI defendants have the ability to petition for conditional release six months after initial confinement, and every six months after a previous petition was denied or revoked. Wis. Stat. § 971.17(4). Six months after being placed on conditional release, an NGI defendant may even file a petition for termination of the underlying commitment order. § 971.17(5). Therefore, if the NGI defendant shows that he is no longer dangerous and is fit to re-enter society, he will be permitted to do so. This indicates direct ties to the

rehabilitative and protective purposes of NGI commitments in a manner that is not excessive.

¶49 An application of the intent-effects test to NGI commitments strongly confirms that NGI commitments do not have a punitive intent or effect. Therefore, NGI commitments are collateral consequences of a defendant's plea. On that basis, we also decline to use our superintending and administrative authority to extend Bangert and Shegrud to require circuit courts to inform NGI defendants of the maximum possible term of commitment they face if their NGI defense succeeds.

### D. The Circuit Court's Error Does Not Entitle Fugere To Withdraw His NGI Plea.

¶50 Having concluded that circuit courts have no duty to inform NGI defendants of the maximum possible term of commitment they face, we still must address the circuit court's undisputed error in this case. The circuit court did not use the correct terminology, nor did it advise Fugere as to the correct civil commitment length. The parties argue over the proper standard in this case. The State asserts that this court should adopt a harmless-error framework for considering plea colloquy defects where a defendant does not have a right to be informed of the information underlying the circuit court's purported error. Fugere argues that this court should employ the "manifest injustice" standard set forth in Bangert and its progeny.

¶51 We conclude that the error here was not one which infected the plea. The information that the circuit court provided did not relate to the maximum potential criminal

27

penalty should Fugere not succeed in his affirmative defense. Courts are not required to inform NGI defendants of the maximum possible term of commitment if their defense succeeds. This case is distinguishable from Bangert and its progeny, where we have applied a "manifest injustice" standard to determine whether a defendant's plea was given knowingly, intelligently, and voluntarily. As we have concluded that there is no requirement for a circuit court to inform NGI defendants of the maximum possible term of commitment, a circuit court's failure to convey, or to accurately convey it cannot render an NGI defendant's plea unknowing, unintelligent, or involuntary. While we do not condone providing misinformation regarding the civil outcome should a defendant be found NGI and we caution courts to be careful to properly advise defendants, the circuit court's error here was harmless.

¶52 Though the circuit court overstated the maximum possible term of commitment by 20 years and said the word "supervision" instead of "commitment," the circuit court's error here was harmless. First, the correct information was given regarding the maximum term of imprisonment. Fugere entered into a plea agreement with the State, and the parties agreed that they would ask the circuit court to determine whether to impose institutional commitment or conditional release. Thus, it was specifically contemplated that Fugere may face commitment if his NGI defense succeeded. Second, at the time the at-issue proceedings occurred, Fugere was already committed pursuant to a case which charged other sexual assault crimes. The circuit

28

court addressed Fugere's committed status on the record at the hearing and confirmed that Fugere was familiar with how the commitment process worked.   Third, at another point in the hearing, Fugere's attorney stated on the record that Fugere was aware that if he violates the terms of any conditional release he may receive, he would be sent back to Mendota Mental Health Institute.   Fourth, given the circuit court's errant statement that the maximum term would be 60 years, Fugere certainly would have thus been aware that he could have been subject to a 40-year term.   Fifth, the circuit court adopted the parties' joint recommendation of 30 years' confinement.   Fugere received exactly what he bargained for regarding his NGI plea:  a 30-year term of commitment as an alternative to a prison sentence of 40 years with 20 years of extended supervision.

¶53 As a result, though the circuit court undoubtedly erred in stating the wrong maximum term of commitment or supervision that would result if Fugere's NGI defense was successful, the circuit court's error was, at most, harmless.[9]

---

[9] We note the court of appeals' conclusion "that circuit courts need not advise a defendant pleading NGI of the potential range of civil commitment he or she will face if found not mentally responsible for his or her crimes, much less do so correctly."   State v. Fugere, 2018 WI App 24, ¶19, 381 Wis. 2d 142, 911 N.W.2d 127.   This statement should not be construed as allowing courts to provide inaccurate information to defendants.   Certainly, courts should exercise caution to ensure that information they provide defendants is correct.

IV. CONCLUSION

¶54 The circuit court provided inaccurate information to Fugere concerning the maximum period of civil commitment should he prevail on his affirmative defense to the criminal charges. Fugere's motion, which sought withdrawal of his NGI plea as a result of the inaccurate information, was denied by the circuit court.

¶55 We conclude that a circuit court is not required to inform an NGI defendant of the maximum possible term of civil commitment at the guilt phase (1) because a defendant who prevails at the responsibility phase of the NGI proceeding has proven an affirmative defense in a civil proceeding, avoiding incarceration, and is not waiving any constitutional rights by so proceeding in that defense; and (2) because an NGI commitment is not punishment but rather, is a collateral consequence to one who successfully mounts an NGI defense to criminal charges. We therefore decline to exercise our superintending and administrative authority to require circuit courts to advise NGI defendants of the maximum period of civil commitment.

¶56 Fugere also requests that this court conclude that the circuit court's error was not harmless with respect to the misinformation provided to him concerning potential civil consequences should he prevail in his defense. The circuit court here provided accurate information to Fugere regarding the maximum possible term of imprisonment but inaccurate information regarding commitment, so we thus address whether the circuit court's error otherwise entitles Fugere to withdraw his NGI

30

plea.  We conclude that the circuit court's error was harmless because it was unrelated to the guilt phase of the NGI defense, and instead, the inaccurate information pertained to the potential civil commitment at the responsibility phase. Additionally, Fugere received the benefit of his plea agreement with the State and otherwise understood the consequences of prevailing on an NGI defense as he was already civilly committed for an unrelated charge.  Thus, there was no manifest injustice and we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶57 ANN WALSH BRADLEY, J. *(dissenting)*. There is no dispute in this case that the circuit court gave Corey Fugere incorrect information regarding the length and nature of the commitment he faced upon pleading not guilty by reason of mental disease or defect (NGI). Fugere was told that he faced a maximum 60 year term of "supervision," when he actually faced a maximum 40 year term of commitment to an institution.

¶58 Sixty, however, is not forty and supervision is not commitment to an institution.

¶59 Nevertheless, the majority indicates that the incorrect information matters not, and denies Fugere the opportunity to withdraw his plea. It concludes first that "a circuit court is not required to inform an NGI defendant of the maximum possible term of civil commitment at the guilt phase . . . ." Majority op., ¶2. Second, the majority concludes that the misinformation provided by the circuit court with regard to the length and nature of the commitment he faced was harmless. Id., ¶3.

¶60 I disagree with both of these erroneous conclusions. In State v. Brown this court previously stated, "[i]f a defendant does not understand the nature of the charge and the implications of the plea, he should not be entering the plea, and the court should not be accepting the plea." 2006 WI 100, ¶37, 293 Wis. 2d 594, 716 N.W.2d 906. This statement is just as true in the NGI context as it is in a criminal case.

¶61 Here Fugere received only half of the story. Although he was accurately informed of the potential prison sentence in

1

the event his NGI defense was unsuccessful, he was deprived of essential information regarding the implications of his NGI plea. As we have done in the past to remedy such a violation, I would invoke this court's superintending authority to ensure that NGI defendants receive full and accurate information about the consequences of their pleas.

¶62 Further, the errors in this case were not necessarily harmless. The circuit court was off the mark by 20 years and incorrectly advised the defendant that he would be placed on supervision rather than confined to an institution.

¶63 Because we do not know based on the record before us how the errors affected Fugere's calculations in entering his plea, we should remand to the circuit court for a Bangert hearing. See State v. Bangert, 131 Wis. 2d 246, 274-75, 389 N.W.2d 12 (1986). Accordingly, I respectfully dissent.

I

¶64 The majority's first error lies in its determination that "a circuit court is not required to inform an NGI defendant of the maximum possible term of civil commitment at the guilt phase . . . ." See majority op., ¶2.

¶65 In Bangert, this court established a mandatory rule that the circuit court must "determine a defendant's understanding of the nature of the charge at the plea hearing by following any one or a combination of the [denominated] methods." Bangert, 131 Wis. 2d at 267. This rule encompasses a requirement that a circuit court must, in its plea colloquy, "[e]stablish the defendant's understanding of the nature of the

2

crime with which he is charged and the range of punishments to which he is subjecting himself by entering a plea." Brown, 293 Wis. 2d 594, ¶35.

¶66 The procedures established in Bangert apply equally to the NGI context. In State v. Shegrud, this court determined that "a court faced with a defendant entering a plea of not guilty by reason of mental disease or defect must address the defendant personally to determine whether the defendant is entering the plea voluntarily with an understanding of the nature of the charge." 131 Wis. 2d 133, 138, 389 N.W.2d 7 (1986).

¶67 Bangert's chief aim was to "ensure a knowing, intelligent, and voluntary plea" by requiring "that a trial judge explore the defendant's capacity to make informed decisions." Brown, 293 Wis. 2d 594, ¶30. As the Brown court explained, "[t]he duties established . . . in Bangert . . . are designed to ensure that a defendant's plea is knowing, intelligent and voluntary. The faithful discharge of these duties is the best way we know for courts to demonstrate the critical importance of pleas in our system of justice and to avoid constitutional problems." Id., ¶23. Put simply, "[i]f a defendant does not understand the nature of the charge and the implications of the plea, he should not be entering the plea and the court should not be accepting the plea." Id., ¶37.

¶68 Neither the Constitution nor Wis. Stat. § 971.08 require the sort of plea colloquy for which Bangert provides. Instead, Bangert and its requirements act as a prophylactic

3

measure "[t]o head off postconviction hearings on plea withdrawals . . . ." Brown, 293 Wis. 2d 594, ¶33.

¶69 Thus, rather than relying on constitutional or statutory principles, the court in Bangert and Shegrud forged its procedure as a function of this court's superintending authority. Bangert, 131 Wis. 2d at 267; Shegrud, 131 Wis. 2d at 138; see Wis. Const. art. VII, § 3(1) (granting this court "superintending and administrative authority over all courts"); Koschkee v. Evers, 2018 WI 82, ¶8, 382 Wis. 2d 666, 913 N.W.2d 878. Our superintending authority is "as broad and as flexible as necessary to insure the due administration of justice in the courts of this state." In re Kading, 70 Wis. 2d 508, 520, 235 N.W.2d 409 (1975).

¶70 As in Shegrud and Bangert, here the court would be wise to utilize its superintending authority. Specifically, Shegrud should encompass not only an advisement of the potential prison sentence an NGI defendant faces, but be extended to encompass the potential period of mental health commitment as well. This minimal extension would ensure that NGI defendants are provided with all relevant information on which to base their decision to enter a plea.

¶71 Such a use of our superintending authority is appropriate because the principles that drove Bangert and Shegrud apply with equal force here. The "due administration of justice" requires that NGI defendants are properly and accurately informed of the potential commitments they face. If the court is truly concerned with ensuring that a defendant's

4

plea is the result of informed decision-making, then circuit courts should be required to ascertain whether the defendant understands the consequences of a successful NGI defense. This requirement includes ascertaining whether the defendant understands the maximum possible term of commitment and its nature.

¶72 However, under the majority's rule, Fugere and future defendants who enter stand-alone NGI pleas can receive incomplete information regarding what could happen to them as a result of their pleas. When the circuit court informs an NGI defendant of the maximum prison sentence only, the defendant receives just half of the information needed to make an informed decision.

¶73 In other words, if the defendant is found to be not guilty by reason of mental disease or defect, then the prison sentence is merely hypothetical. It is commitment, and not imprisonment, that will actually come to fruition. Yet the defendant is only informed of one possible sanction when there are two distinct possibilities——commitment or prison.

¶74 This court should ensure that defendants pleading NGI are provided with information that is actually useful to them and will assist in making informed decisions regarding their pleas. Accordingly, I would invoke this court's superintending authority to minimally extend Shegrud. Circuit courts should be required not only to inform defendants of the maximum penalty if found guilty of the charge, but also to accurately inform NGI defendants of the maximum commitment they face.

5

II

¶75 The majority's second error lies in its conclusion that the misinformation given by the circuit court was harmless. See majority op., ¶3. Two significant pieces of inaccurate information marred the plea colloquy in this case.[1] I address each in turn.

¶76 First, the circuit court misstated the maximum commitment Fugere could receive. The circuit court told Fugere he faced a maximum commitment of sixty years, when he actually faced forty years.[2]

¶77 Such an error is not necessarily harmless. "When a defendant is told that he faces a higher punishment than provided by law and pleads guilty, the plea colloquy is on its face defective under Bangert." State v. Cross, 2010 WI 70, ¶48,

---

[1] The majority bases its determination that the errors were harmless on the assertion that they were "unrelated to the guilt phase of the NGI defense . . . ." Majority op., ¶3. However, the record reflects that there was a single plea colloquy instead of two separate proceedings. The guilt and responsibility phases were addressed by the circuit court during the span of the single twenty-minute plea hearing.

[2] The majority paints with a very broad brush in appearing to declare that a circuit court's errors in inaccurately conveying the maximum period of commitment will always be harmless. See majority op., ¶51 ("As we have concluded that there is no requirement for a circuit court to inform NGI defendants of the maximum possible term of confinement, a circuit court's failure to convey, or to accurately convey it cannot render an NGI defendant's plea unknowing, unintelligent, or involuntary.") (emphasis added). Such a pronouncement is ill-advised and eyebrow-raising. If Fugere were told that he faced a maximum of one year of "supervision" when he actually faced a forty year commitment to an institution, would the error really be harmless? The majority appears to say that it would.

6

326 Wis. 2d 492, 786 N.W.2d 64 (Abrahamson, C.J., concurring). Likewise, because I determine that a circuit court should be required to advise a defendant pleading NGI of the maximum term of commitment, the same principle applies here.

¶78 Fugere was told he faced a longer period of commitment than he actually faced. At this stage of the proceedings, we do not know how this error affected Fugere's calculations in entering his plea.

¶79 Second, the circuit court mistakenly stated that Fugere faced a period of "supervision," when he actually faced "commitment." Again, such an error is not necessarily harmless.

¶80 Just as there is a significant difference between sixty years and forty years, there likewise can be a significant difference between supervision and commitment. Although supervision is often served in the community, commitment can involve institutional care. Compare Wis. Stat. § 302.113 with § 971.17(3).

¶81 The majority indicates that "[t]he circuit court addressed Fugere's committed status on the record at the hearing and confirmed that Fugere was familiar with how the commitment process worked." Majority op., ¶52. An experience of a prior commitment proceeding presents a slim reed upon which to rest a conclusion that a plea is knowingly, intelligently, and voluntarily made.[3] But even if the majority were correct,

---

[3] The circuit court's "confirmation" of Fugere's understanding was quite cursory. The transcript of the plea hearing reflects the following brief exchange:

(continued)

7

wouldn't the specification that he faced "supervision" instead of "commitment" be particularly relevant to an individual familiar with the commitment process?

¶82 Again, given the current state of the record we do not know if or how these errors affected Fugere's calculations in entering his plea. Accordingly, I would remand to the circuit court for a Bangert hearing at which the State has the burden of proof to demonstrate by clear and convincing evidence that the defendant's plea was knowingly, intelligently, and voluntarily entered despite the deficiencies in the plea hearing. See Bangert, 131 Wis. 2d at 274-75.

¶83 For the reasons set forth above, I respectfully dissent.

¶84 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and REBECCA FRANK DALLET join this dissent.

---

THE COURT: You've been on a conditional release on a different case here before, right?

THE DEFENDANT: Yes.

THE COURT: Do you understand what that's all about?

THE DEFENDANT: Yes.