# COURT OF APPEALS
# DECISION
# DATED AND FILED

## August 13, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

Appeal No. **2023AP2118-CR**

Cir. Ct. No. 2019CF714

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

LAPIATE P. BOONE,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Racine County: WYNNE P. LAUFENBERG, Judge. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Lapiate P. Boone appeals the judgment entered after he pled no contest to first-degree intentional homicide (WIS. STAT. § 940.01(1)(a) (2023-24)[1]) and battery (WIS. STAT. § 940.20(1m)(b)).[2]  He also appeals the order denying his postconviction motion seeking plea withdrawal.  We affirm.

## BACKGROUND

¶2    The State charged Boone with one count of battery (WIS. STAT. § 940.20(1m)(b)), one count of first-degree intentional homicide (WIS. STAT. § 940.01(1)(a)), one count of attempted first-degree intentional homicide (§ 940.01(1)(a)), and one count of mayhem (WIS. STAT. § 940.21), all of which arose from an altercation between Boone and the victims.[3]  At the initial appearance, the prosecutor stated that first-degree intentional homicide was "punishable by life imprisonment[.]"  The initial Complaint, as well as later court filings, also advised that "upon conviction [of first-degree intentional homicide, Boone] shall be sentenced to imprisonment for life."  The State filed an Information in July 2019, and Boone initially pled not guilty to the charges.  On March 19, 2021, three days before the jury trial was scheduled to begin, Boone pled no contest to first-degree intentional homicide and battery.  The attempted first-degree intentional homicide and mayhem counts were dismissed but read in.

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

[2]  Both charges involved use of a dangerous weapon enhancers, *see* WIS. STAT. § 939.63(1)(b) and (1)(c), and the battery charge also carried a domestic abuse assessment, *see* WIS. STAT. § 973.055(1).

[3]  These are the charges as reflected in the Second Amended Complaint filed in October 2020, some of which include the domestic abuse surcharge (WIS. STAT. § 973.055(1)) and all of which include the use of a dangerous weapon enhancer (WIS. STAT. § 939.63(1)(b) and (1)(c)).  Boone had initially faced additional charges that were later removed.

¶3     Before the plea hearing, Boone met with his attorneys and completed a plea questionnaire form. One section of the form stated "I understand that the judge is not bound by any plea agreement or recommendations and may impose the maximum penalty." Following that statement, the form listed the maximum penalty for first-degree intentional homicide as "[m]andatory life imprisonment," and the mandatory minimum penalty as "[l]ife imprisonment" with "possible parole after 20 years." The form also stated that the "State will stand silent on parole eligibility."

¶4     At the plea hearing, the circuit court reviewed the maximum and minimum penalties listed on the form, and Boone confirmed that he understood them and did not have any questions. Boone also confirmed that he had discussed the charges he was agreeing to plead to and the possible defenses with his attorneys and that he had enough time to do so. The court asked Boone whether his attorneys had "made any promises to [him] that when we come back for a sentencing, that [he] would be receiving a specific sentence from me?" He responded, "No, ma'am." At the sentencing hearing, the court sentenced Boone "to life imprisonment without eligibility for extended supervision."

¶5     In April 2023, Boone filed a postconviction motion seeking plea withdrawal: (1) based on his allegations that the plea colloquy was defective; and (2) because he received ineffective assistance of counsel. He claimed that the colloquy was defective because the circuit court did not inform him that it was not bound by the plea agreement, and alleged that his attorneys provided ineffective assistance of counsel because they did not inform him that the court was not bound by the plea agreement and could sentence him to life imprisonment without the possibility of extended supervision.

¶6      The circuit court held a hearing on Boone's postconviction motion in September 2023. When asked about the plea questionnaire form and whether he had reviewed it with his attorneys, Boone said he could not "recall that document." When presented with the form, he stated he could not remember going over it with his attorneys despite acknowledging that the form stated he had "reviewed … this entire document and any attachments" "with my attorney" and that his signature appeared directly below that statement. He also stated that he could not remember being told that the court could deny him the possibility of extended supervision, and testified that he had agreed to enter the plea because he believed he would receive extended supervision.

¶7      One of Boone's trial attorneys testified that he spoke with Boone multiple times throughout the case about whether he wanted to plead or go to trial. He stated that the agreement was that Boone would plead no contest to the first-degree intentional homicide charge and that the State would not take a position on the possibility of extended supervision. He further testified that he and his supervisor had discussed the possibility of extended supervision with Boone and would have made it clear to him that there was no guarantee of extended supervision, even if he agreed to the plea deal. The attorney explained that Boone did not want to put his children on the stand as witnesses and that this was a major factor for him in deciding to agree to the plea deal. According to Boone's attorney, Boone was very engaged and participated in strategy conversations, and he believed Boone would have asked him a question when reviewing the plea questionnaire form if there was something he did not understand.

¶8      In a thorough written decision, the postconviction court found that there was no defect in the plea colloquy and explained that even if there had been, the State had proved by clear and convincing evidence that Boone's pleas were

knowing, intelligent, and voluntary. Specifically, the court noted that it had informed Boone of the maximum penalty for the first-degree intentional homicide charge and that the State did not make any recommendation as to whether Boone should be eligible for extended supervision. The court found that based on everything discussed at the plea hearing, Boone knew it could impose a sentence making him ineligible for extended supervision. The court also found that trial counsel had reviewed the potential penalties with Boone, that they told him there were no guarantees regarding extended supervision, and that both attorneys were experienced defense attorneys. Accordingly, the court determined that Boone failed to show that his attorneys' performance was deficient and that he therefore could not establish that he received ineffective assistance of counsel.

## STANDARD OF REVIEW

¶9     "Whether a guilty plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact." *State v. Fugere*, 2019 WI 33, ¶17, 386 Wis. 2d 76, 924 N.W.2d 469. We uphold the circuit court's findings of fact unless they are clearly erroneous. *State v. Brown*, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906. Whether those facts show that Boone entered the plea knowingly, intelligently, and voluntarily is a question of law we review de novo. *See id.* Whether counsel rendered ineffective assistance "presents a mixed question of law and fact." *State v. Thiel*, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305. We review de novo whether the facts satisfy *Strickland v. Washington*'s[4] two-prong ineffective assistance of counsel test. *State v. Domke*, 2011 WI 95, ¶33, 337 Wis. 2d 268, 805 N.W.2d 364.

---

[4] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

DISCUSSION

¶10    A defendant attempting to withdraw a plea post-sentencing must show "by clear and convincing evidence" that plea withdrawal is necessary to correct a "'manifest injustice.'"  ***Brown***, 293 Wis. 2d 594, ¶18 (citation omitted).  A defendant may establish a manifest injustice by showing that the defendant did not knowingly, intelligently, and voluntarily enter the plea.  ***Id.***, ¶19.  A defendant can show this if the plea colloquy was defective.  *See, e.g.*, ***State v. Taylor***, 2013 WI 34, ¶32, 347 Wis. 2d 30, 829 N.W.2d 482.  A defendant who moves to withdraw a plea based on a defective plea colloquy has the initial burden of establishing the two-prong test under ***Bangert***: "the defendant must (1) make a prima facie showing of a violation of WIS. STAT. § 971.08 or other court-mandated duty, and (2) allege that the defendant did not, in fact, know or understand the information that should have been provided during the plea colloquy."  ***Taylor***, 347 Wis. 2d 30, ¶32 (citing ***State v. Bangert***, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986)).  Once the defendant establishes the two prongs, the defendant is entitled to an evidentiary hearing where the State has the burden to show with clear and convincing evidence that the plea was knowing, intelligent, and voluntary despite the defective plea colloquy.  ***Taylor***, 347 Wis. 2d 30, ¶32.  Pursuant to § 971.08(1)(a), the circuit court, during the plea colloquy, must "determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted."

*Defective Plea*

¶11    Boone contends that the plea colloquy was defective and is grounds for plea withdrawal based on his contention that the circuit "court failed to inform [him] that it was not bound by the plea negotiations," and thus did not confirm that Boone understood the potential punishment if convicted.  The Record belies his

claim, as it establishes that Boone was, in fact, given this information. Specifically, in addition to confirming that Boone had reviewed the plea questionnaire, which directly stated that the court was "not bound by any plea agreement or recommendations and may impose the maximum penalty[,]" with his attorneys, the court *also* confirmed with Boone that he had not been promised "a specific sentence[.]" There is simply no way to construe this as anything other than the court having explained to Boone that it had full discretion to impose any sentence within the minimum and maximum penalties allowed by law, regardless of what may have been discussed during the course of plea negotiations. Furthermore, even if Boone could have established that the plea colloquy was defective, he still would not be entitled to plea withdrawal because the court held a hearing at which the State proved that Boone's plea was knowing, intelligent, and voluntary.

*Ineffective Assistance*

¶12    A defendant may also establish that a manifest injustice occurred by proving that trial counsel provided ineffective assistance. ***State v. Dillard***, 2014 WI 123, ¶84, 358 Wis. 2d 543, 859 N.W.2d 44. To show that counsel provided ineffective assistance, the defendant must prove: (1) that counsel's performance was deficient; and (2) this deficiency prejudiced the defendant. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). Counsel's performance was deficient if the representation fell below the objective standard of reasonableness under the circumstances. ***Id.*** at 687-88. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** at 694.

¶13    Boone claims his trial counsel provided ineffective assistance because they "failed to inform [him] that the [circuit] court was not required to follow the

plea agreement or recommendation." He also argues his attorneys "did not inform [him] that the court could sentence [him] to one life term without the possibility for release on extended supervision."

¶14    After hearing testimony from both Boone and one of his trial counsel, the circuit court found: (1) Boone's trial counsel were experienced; (2) his counsel reviewed the potential penalties with Boone and had told him there were no guarantees regarding extended supervision; (3) his counsel reviewed the plea questionnaire in its entirety with the defendant; and (4) the defendant and counsel discussed the possibility of life imprisonment without extended supervision. Based on these findings, the court concluded that Boone's lawyers were not deficient, and the Record supports the court's findings and conclusion. Trial counsel's testimony at the hearing, together with the plea questionnaire form, refutes Boone's self-serving contentions. The fact that Boone alleges he does not remember going over the plea questionnaire form or having had the relevant discussions appears to stem from his "[d]isappointment in the eventual punishment[, which] does not rise to the level of a manifest injustice." *See Taylor*, 347 Wis. 2d 30, ¶49. Because Boone has failed to show that his trial counsel were deficient, he cannot establish that he received ineffective assistance of counsel.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.